IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| CHERYL R. NEELEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 04-1071-CV-W-ODS |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

<u>ORDER AND OPINION AFFIRMING
COMMISSIONER'S FINAL DECISION DENYING BENEFITS</u>

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying her application for disability and upplemental security income benefits. The Commissioner's decision is affirmed.

<u>I. BACKGROUND</u>

Plaintiff was born in August 1956, has a high school education, and has prior work experience as a cleaner, laborer, stocker, assembler and packer. She filed her claim for benefits in November 2000, alleging she became disabled on February 28, 1999.

Plaintiff injured her back in an motor vehicle accident in August 1999, and underwent a diskectomy at L5-S1 in December 1999. She was discharged on December 22 with restrictions against bending or twisting at th the waist or lifting more than thirty pounds. R. at 168. Less than a week later, she told Dr. Gregory Stanley she was using her husband's Percocet and "everything else she can get her hands on," even though her doctors had been unwilling to prescribe narcotic pain medication because of her history of drug abuse. R. at 260. Dr. Stanley prescribed her one week's worth of OxyContin but warned her she would be prescribed diminishing dosages for six weeks, at which time she would not receive any more. R. at 260.

On January 3, 2000, Plaintiff told Dr. Stanley she experienced "significant" improvement in her symptoms, and he noted a good range of motion. He continued Plaintiff's restrictions on bending, twisting, and lifting. R. at 258. Plaintiff visited her osteopath, Dr. Wade McCullough, ten days later. She told Dr. McCulllough her back was improved but she still experienced pain in her hip occasionally. He prescribed Soma but warned she would not be permitted any refills. R. at 184.

X-rays were taken on January 31, 2000, and revealed "minimal narrowing" at L5-S1 but nothing else remarkable. R. at 257. She was examined again in April 2000, at which time straight leg raising was negative. The physician restricted her from lifting more than twenty-five pounds and from bending or twisting. R. at 255-56. In October 2000, Plaintiff reported being in another accident and being in pain. She reported that she was pain-free before this accident, and following this latest accident had been using heating pads and her husband's Percocet and Soma. R. at 253. She received prescriptions for Soma, Vioxx and Paxil.

On January 31, 2001, Dr. Robert Rondineli performed a consultative examination. Plaintiff reported pain radiating from back to her hip, thigh and calf that rated eight to ten on a scale of one to ten. Activities, such as cleaning and other household chores, exacerbated the pain. R. at 220. Dr. Rondineli noted Plaintiff was not putting forth maximum effort during the testing process, which may have affected his findings. R. at 221. He indicated that if Plaintiff "were to return to work, she would require [the] ability to alternate sitting and standing to relieve pain and discomfort on a periodic basis, with opportunity to shift positions at least hourly if not more frequently. I would restrict her from lifting not to exceed ten pounds." R. at 222.

Plaintiff sought next sought treatment in April 2001, complaining of pain in her lower back and right leg and asked for Percocet. She demonstrated an abnormal gait but her length strength was normal. She was prescribed Percocet. R. at 250. She did not seek medical treatment again until January 22, 2002, after injuring her back while trying to move a refrigerator. She asked for and was prescribed Percocet. R. at 302. She missed several appointments scheduled after that date. R. at 301. Subsequent examinations revealed

2

Plaintiff's back was stable, but in April 2002 she again injured her back trying to move a refrigerator. R. at 307. She again asked for and received Percocet. R. at 308.

In May 2002 Plaintiff complained of pain in her back and leg, but was able to ambulate without difficulty. Flexing and bending presented no difficulty or pain unless done to extremes. She was prescribed Vioxx, Elavil and Flexeril and instructed to do physical therapy. R. at 294. X-rays were unremarkable. R. at 295. Plaintiff did not fill the prescription for Flexeril, R. at 297; around this time, the doctors began to suspect Plaintiff was really engaged in "drug seeking behavior" (for Percocet) based on the nature and frequency of her visits and her admission that she used her husband's Percocet when she did not have any of her own. R. at 298. It was decided to decrease Plaintiff's medication. R. at 292. Plaintiff still requested Percocet despite this plan, and upon being denied declared she did not want to decrease her use of Percocet and did not return to her next appointment. R. at 286. Reports from her last visit revealed normal back alignment, normal range of motion, and minor degenerative changes. R. at 286-87.

Plaintiff was next examined on September 4, 2002, and she again sought a refill of Percocet. She reported no pain or decreased range of motion. R. at 279-83. Similar reports were made in December 2002, R. at 272, 275, February 2003. R. at 265, 323, March 2003, R. at 315-16, and May 2003. R. at 312-13.

During the administrative hearing, Plaintiff testified that she was worse following the December 1999 surgery. She was restricted from lifting over five to ten pounds, required both hands to lift a gallon of milk, and suffered from numbness in her hands every day. R. at 27-30. She also alleges she suffered from numbness in her feet. R. at 32. Plaitnff also complained of depression, R. at 42-43, and claimed that she tired easily because she had hepatitis C. R. at 44. In addition to Percocet, Plaintiff reported being prescribed a walker and that she had used a cane since shortly after the surgery. R. at 40-41. She estimated that she could walk for half a block, sit for twenty minutes, stand for twenty minutes, and needed to sit in a recliner with her feet elevated three or four times a day. R. at 32-37.

A medical expert (Doctor Lynn Curtis) testified about Plaintiff's surgery and indicated Plaintiff could perform sedentary or light work and that Plaintiff's need for an opportunity to

3

alternate positions was supported by the medical records. R. at 50-51. Dr. Curtis also testified that fatigue was a common symptom of hepatitis C, but the records indicated Plaintiff's fatigue was related to her medication and discomfort.

A vocational expert ("VE") also testified. The ALJ asked her to assume a person of Plaintiff's age with Plaintiff's educational and vocational background who could lift ten pounds maximum, two to three pounds frequently, and required an opportunity to sit or stand while performing simple work. The VE testified that such a person could work as a cashier, assembler, and information clerk. R. at 55-56. However, such a person could not work if their concentration were impaired to the point she could not remember job instructions, get to work on time, or interact with others. R. at 57. Similarly, such a person could not work if they needed an opportunity to elevate her legs or lie down for thirty minutes three times a day. R. at 57.

### III. DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Smith v. Schweiker, 728 F.2d 1158, 1161-62 (8th Cir. 1984).

The familiar standard for analyzing a claimant's subjective complaints is set forth in Polaski v. Heckler:

4

> While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.
>
> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1. the claimant's daily activities;
> 2. the duration, frequency and intensity of the pain;
> 3. precipitating and aggravating factors;
> 4. dosage, effectiveness and side effects of medication
> 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

739 F.2d at 1322 (subsequent history and internal citations omitted). Although a claimant's subjective complaints cannot be disregarded solely because they are not fully supported by objective medical evidence, they may be discounted if there are inconsistencies in the record as a whole. See Wilson v. Chater, 76 F.3d 238, 241 (8th Cir. 1996). Further, an ALJ does not have to discuss each Polaski factor as long as the analytical framework is recognized and considered. Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004).

Plaintiff's allegations of error all stem from a single contention: the ALJ improperly discounted her subjective complaints in deriving her residual functional capacity. The

5

Case 4:04-cv-01071-ODS   Document 18   Filed 10/24/05   Page 5 of 6

Court concludes the ALJ's findings regarding Plaintiff's credibility and Plaintiff's residual functional capacity are supported by substantial evidence in the record as a whole.

Plaintiff's testimony is contradicted by her reports to physicians. She did not tell physicians that she was using a cane, experienced numbness in her hands and feet, or that she was as limited physically as she described during the hearing. To the contrary, she told doctors her pain was controlled, and reported engaging in a variety of activities inconsistent with the degree of disability she claimed. These activities include moving refrigerators (as noted earlier), working in the garden and operating a weed trimmer, R. at 292, moving furniture, R. at 313, and caring for her husband (who suffers from terminal cancer). As the ALJ observed, these are "activities which normally are not carried out by persons with debilitating orthopedic pain." R. at 21.

In addition to the conflict between Plaintiff's reports to physicians and her testimony, the physicians' medical opinions paint a different picture than Plaintiff's testimony. Objective tests, including MRIs and x-rays, revealed no medical basis for debilitating pain. Even under Polaski, the lack of objective data is a factor the ALJ may consider in assessing a claimant's credibility. Finally, none of Plaintiff's doctors indicated Plaintiff was or should be limited in the manner she described.

The record supports the ALJ's decision to discount Plaintiff's credibility and find she retains the residual functional capacity to lift a few pounds regularly and perform work that requires the option to sit or stand and to change positions. The record does not support restrictions any greater than those found by the ALJ. Finally, the record supports the ALJ's ultimate conclusion that Plaintiff could perform work.

### III. CONCLUSION

For these reasons, the Commissioner's final decision denying benefits is affirmed. IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
DATE: October 24, 2005　　　　　　　　　　UNITED STATES DISTRICT COURT